CLERK'S OFFICE
A TRUE COPY
Apr 18, 2025
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
Information associated with paidape@icloud.com that is stored at premises owned, maintained, controlled, or operated by Apple Inc., a company headquartered at One Apple Park Way, Cupertino, California.

Case No. 25-M-372 (SCD)

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the ________________ District of ________________ *(identify the person or describe the property to be searched and give its location)*:

see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 5-2-25 *(not to exceed 14 days)*

❒ in the daytime 6:00 a.m. to 10:00 p.m. ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to Honorable Stephen C. Dries.
*(United States Magistrate Judge)*

❒ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❒ for ____ days *(not to exceed 30)* ❒ until, the facts justifying, the later specific date of ________________.

Date and time issued: 4-18-25. 9:30 am

Stephen C. Dries
*Judge's signature*

City and state: Milwaukee, WI

Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

**Return**

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| --- | --- | --- |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: ____________________

____________________
*Executing officer's signature*

____________________
*Printed name and title*

## ATTACHMENT A
**Property to Be Searched**

This warrant applies to information associated with paidape@icloud.com that is stored at premises owned, maintained, controlled, or operated by Apple Inc., a company headquartered at One Apple Park Way, Cupertino, California.

# ATTACHMENT B
## Particular Things to be Seized

1. Information to be disclosed by Apple (Provider)

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, regardless of whether such information is stored, held or maintained inside or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Apple, or has been preserve, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A from 03/01/2024 to 01/05/2025:

- All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);
- All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"),

Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

- The contents of all emails associated with the account from 03/01/2024 to 01/05/2025, including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;
- The contents of all instant messages associated with the account 03/01/2024 to 01/05/2025, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;
- The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes),

iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

- All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;
- All records and information regarding locations where the account or devices associated with the account were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps;
- All records pertaining to the types of service used;
- All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken; and
- All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

Apple is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of Title 18 U.S.C § 2119 – Carjacking and Title 18 U.S.C § 922(g)(1) – Felon in Possession of a Firearm, those violations involving Areon DAVIS and occurring after 03/01/2024 to 01/05/2025, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) Records containing the sale/purchase order of ammunition in a illegal format that is intended for the military/law enforcement that would not be for public use. Records can be contained in emails, text messages, SMS messages, iMessages, etc.

(b) Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(c) Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(e) The identity of the person(s) who communicated with the user ID about matters relating to the conspiracy and illegal importation of ammunition, including records that help reveal their whereabouts.

**CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)**

I, ________________________________, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by ___________________ ("Provider") and my title is ____________________________. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Provider. The attached records consist of ______________________________________ (*generally describe records in terms of pages, CDs or megabytes of data*). I further state that:

a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Provider, and they were made by Provider as a regular practice; and

b. such records were generated by Provider's electronic process or system that produces an accurate result, to wit:

1. the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Provider in a manner to ensure that they are true duplicates of the original records; and

2. the process or system is regularly verified by Provider, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____________________________ Date

_____________________________ Signature

CLERK'S OFFICE
A TRUE COPY
Apr 18, 2025
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Information associated with paidape@icloud.com that is stored at premises owned, maintained, controlled, or operated by Apple Inc., a company headquartered at One Apple Park Way, Cupertino, California.

Case No. 25-M-372 (SCD)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

see Attachment A,

located in the ____________ District of ____________, there is now concealed *(identify the person or describe the property to be seized)*:

see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 2119 | Carjacking |
| 18 U.S.C. § 924(c) | Use of a Firearm during the Commission of a Violent Crime |
| 18 U.S.C. § 922(6) | Possession of Firearm by a felon |

The application is based on these facts:

see attached Affidavit.

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of ______ days *(give exact ending date if more than 30 days:* ____________ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

FRANK RUTTER Digitally signed by FRANK RUTTER Date: 2025.04.17 11:09:03 -05'00'

*Applicant's signature*

Frank Rutter, ATF Special Agent

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone *(specify reliable electronic means)*.

Date: 4-18-25

*Judge's signature*

City and state: Milwaukee, Wisconsin

Honorable Stephen Dries, U.S. Magistrate Judge

*Printed name and title*

AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT

I, Frank Rutter, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain account that is stored at premises owned, maintained, controlled, or operated by Apple Inc. ("Apple"), an electronic communications service and/or remote computing service provider headquartered at One Apple Park Way, Cupertino, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Apple to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2. I am employed as a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been since 2015. As an ATF Agent, I have participated in the investigation of firearms-related offenses, including violent crimes such as armed carjackings and robberies, and narcotics-related offenses, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, and weapons. As a firearms investigator, I have interviewed many individuals involved in firearm-related offenses and drug trafficking and have obtained information from them regarding acquisition, sale, importation, manufacture, and distribution of firearms and controlled substances. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology utilized by violators of firearms

law and traffickers and abusers of controlled substances.

3. I have completed approximately 26 weeks of training at the Federal Law Enforcement Training Center in Glynco, Georgia, as well as the ATF National Academy. That training included various legal courses related to constitutional law as well as search and seizure authority. Additionally, I have received training on how to conduct various tasks associated with criminal investigations, such as interviewing, surveillance, and evidence collection.

4. The facts in this affidavit come from my personal observations, training, experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

6. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18 U.S.C § 2119 – Carjacking and Title 18 U.S.C § 922(g)(1) – Felon in Possession of a Firearm have been committed and that evidence of those violations is contained in the following Apple iCloud account which is linked to Aeron DAVIS (DOB:XX/XX/2003). This is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

- paidape@icloud.com

**JURISDICTION**

This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), &

(c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

### August 17, 2024 - Carjacking (Location 1)

7. Affiant has reviewed Milwaukee Police Department (MPD) reports associated with MPD IR C2408170037 which were related to a carjacking investigation. Those reports document how on August 17, 2024, MPD responded to an armed carjacking which occurred at 2609 N. Fratney Street, Milwaukee, Wisconsin (Location 1). Those reports reflect that when officers arrived, they spoke with victim, M.P. who stated he/she was working as an Uber driver when he/she had been carjacked by two unknown black males.

8. Those reports reflect that M.P. was interviewed by Detective Carloni, who reported M.P. made the following statements: M.P. explained they had been an Uber driver for approximately six years and identified their vehicle as a 2020 Black, Dodge Durango SUV with Wisconsin license plate 700XRF (VIN: 1C4SDJCTXLC262104). M.P. related they had accepted an Uber ride request at approximately 5:15 AM (CST) on August 17, 2024, with a pickup location of 2630 N. Fratney Street in Milwaukee, Wisconsin. M.P. explained while traveling to pick up the Uber customer they were stopped at a redlight traveling East at the intersection of E. Center Street and N. Holton Street in Milwaukee, Wisconsin. At this intersection, M.P. explained they observed a black four door sedan with heavy window tints stopped at the same traffic light facing South. When M.P. received the green light to proceed East through the intersection, M.P. observed the aforementioned black sedan disregard the red traffic light, make a left turn to follow M.P. East on E. Center Street. M.P. stated they turned South on N. Fratney Street and pulled over in front of 2609 N. Fratney Street to pick up the Uber customer. At this time, M.P. explained the black

sedan slowly drove by before turning West onto E. Clarke Street. M.P. recalled a "short time" later someone (Suspect 1) approached his/her vehicle after coming from the Northwest corner of N. Fratney Street and E. Clarke Street. M.P. stated Suspect 1 approached his/her vehicle with a silver handgun pointed at him/her. M.P. explained Suspect 1 knocked on the vehicle window with the handgun and demanded the victim exit the vehicle and give up the vehicle keys. M.P. explained he/she complied with the request and began walking North on N. Fratney Street away from his/her vehicle. M.P. recalled hearing Suspect 1 yell for Suspect 2 to get in the vehicle. M.P. stated they observed Suspect 2 come from the West alleyway on N. Fratney Street and enter the passenger seat of M.P.'s vehicle. Suspect 1 entered the driver's seat, and the vehicle fled South on N. Fratney Street before turning and going West on E. Clarke Street.

9. Detective Carloni further reported that M.P. described Suspect 1 as a black male, approximately 20 years old, 5'7" to 5'8", thin build with a short afro and a dark complexion. M.P. stated Suspect 1 was wearing a black sweatshirt with the hood cinched around their face and was armed with a silver handgun.

10. M.P explained his/her black iPhone 12 with a black and red Air Jordan case was taken in addition to their State of Wisconsin ID and $60 in United States Currency. As of January 30, 2025, agents still believe this property to be outstanding and not yet recovered. I am aware Uber drivers utilize a cellular device to accept ride requests and must use those same devices for in-car information during the ride such as the suggested route of travel. These devices are often mounted and displayed in a manner that the passengers can view the information, and the driver can receive information handsfree. It is likely the device reported stolen by M.P. is also the device he/she utilized to conduct their Uber business.

11. Detective Carloni reported that M.P. described Suspect 2 as a black male but could not provide any further detail.

12. Detective Bongel was assigned video-surveillance follow up and reported he recovered video surveillance footage from nearby store, Riverwest Co-Op located at 733 E. Clarke Street. SA Rutter obtained a copy of these recordings and reviewed them which depicted the following: the victim's vehicle can be observed traveling South on N. Fratney Street before pulling alongside the West curb and facing South. Review of the surveillance cameras revealed the suspect's vehicle, a dark four door sedan passed the victim's vehicle traveling South on N. Fratney Street where it then turned West onto E. Clarke Street. The suspect vehicle could be seen stopping in front of 726 E. Clarke Street where two suspects (both passengers) exited the vehicle and began walking towards and then North on N. Fratney Street towards the victim's vehicle. The suspect vehicle can be further described as a black, four door sedan with window tints. The vehicle appeared to have dark wheels and a license plate affixed to the front and rear bumpers. Below is a picture of the suspect vehicle taken from the surveillance footage.



13. That video further shows both suspects to be wearing dark clothing. The two suspects can be seen on video approaching the victim's vehicle before committing the carjacking. Suspect 1 approached the driver's side of the vehicle and could be seen raising their arm towards the vehicle as they neared. It should be noted the victim previously related to Detective Carloni that Suspect 1 pointed a firearm at them while approaching. Suspect 2 approached the passenger side of the vehicle. After depriving the victim of their property, Suspect 2 could be seen fleeing on foot back to the suspect vehicle and Suspect 1 drove the victim's vehicle South on N. Fratney Street and then West on E. Clark Street where it passed the suspect vehicle. Both vehicles traveled West on E. Clarke Street to flee the area.

**August 17, 2024 – Fleeing/Eluding (Location 2 and 3)**

14. Affiant further reviewed MPD reports associated with MPD IR C2408170036 which were related to a fleeing/eluding offense from that same date involving the victim's vehicle after the carjacking. Those reports reflect that MPD Squad 5340 was dispatched to assist with the aforementioned carjacking incident. Officer Roembke reported that while traveling to the site of the carjacking with his partner Officer Gregory, they observed the black Dodge Durango headed West on W. Center Street at the intersection of N. 27th Street in Milwaukee. The driver of the Dodge Durango immediately started accelerating at a high rate of speed headed west from N. 27th Street (Location 2). MPD officers activated their emergency lights and siren to affect a traffic stop, but the driver refused to stop while accelerating to even higher speeds. The vehicle pursuit continued for 1.9 miles as the driver disregarded red traffic lights and stop signs. MPD lost sight of the Dodge Durango on N. Appleton Avenue and W. Center Street in Milwaukee, Wisconsin

(Location 3). The vehicle's speed reportedly reached over 90 miles an hour and included driving on the wrong side of the road.

**August 17, 2024 – FLOCK hit (Location 4)**

15. On August 17, 2024, at approximately 10:41 AM (CST), the victim's vehicle was recorded by an automated license plate reader traveling North on N. 91st Street through W. Silver Spring Drive in Milwaukee, Wisconsin (Location 4). SA Rutter learned this information through a license plate query in the FLOCK system.




**August 18, 2024 – Vehicle Recovery**

16. On August 18, 2024, MPD responded to the area of 5722 N. 84th Street in Milwaukee, Wisconsin after receiving information that the Dodge Durango was pinging there. This information was documented in a report written by Officer Leidy under MPD IR C2408170037. The report stated upon arrival, Officer Leidy and Officer Rummel located the victim's vehicle parked directly across from 5722 N. 84th Street. The vehicle was observed to have

a red dealership placard on the rear bumper and the white stripes on the hood had been removed. Officers conducted surveillance of the vehicle and observed an unknown black male subject wearing a black zip-up hooded sweatshirt and black jogging pants with a blue stripe down the exterior of both legs exit the south door of 8500 W. Fond du Lac Avenue. Officers observed the unknown black male approach the vehicle where the subject appeared to take a photo of the vehicle. The subject then re-entered into the building. Officers continued to monitor the vehicle but ultimately decided to approach and recover the vehicle. The vehicle was recovered and towed as evidence without incident. Below is an image depicting the proximity of 5722 N. 84th Street and 8500 W. Fond du Lac Avenue.




**Vehicle Processing**

17. On August 19, 2024, Detective Barker responded to MPD's tow lot to process the recovered vehicle with Forensic Investigator Roeglin. Detective Barker's report detailed several items of evidentiary value were recovered from the vehicle including, but not limited to, an iPhone with an unknown model, unknown serial number, contained on Milwaukee Police Department

Inventory No. 24023778, Item 1. Photographs of the recovered device showed it to be blue and without a protective case. It should be noted the victim previously described their personal device as a black iPhone housed within a red and black Air Jordan branded protective case. Investigator Roeglin also obtained 7 DNA swabs and 12 latent print lifts. Those prints were compared to a database of known fingerprints and that analysis identified two such latent prints (from the driver's door window and the rear driver's side door) as that of Michael A. Johnson (DOB: XX/XX/2005).

**Michael A. Johnson**

18. A review of Wisconsin Circuit Court records revealed Michael Johnson received an adult felony conviction under Milwaukee County Case 2021CF000045 for violating Wisconsin statute 940.20(1) – Battery by Prisoners. This conviction prohibits Michael Johnson from legally possessing firearms.

19. Additionally, Michael Johnson has numerous juvenile felony convictions:

- 2022JV000327 – Armed Robbery, 943.32(2)
- 2020JV000529 – Robbery with Use of Force (943.32(1)(a)), Drive or Operate Vehicle w/o Consent (943.23(3))
- 2019JV000362 – Drive or Operate Vehicle w/o Consent (943.23(3))
- 2018JV000716A – Operate Vehicle w/o Consent-Passenger (943.23(4m))
- 2018JV000716 – Robbery with Use of Force (943.32(1)(a)), Operate Vehicle w/o Consent-Passenger (943.23(4m))

20. Your affiant is aware on August 26, 2024, Detective Carloni showed a photo array

to the victim which included a photograph of Michael Johnson. This event is memorialized in report associated with MPD IR C2408170037. Additionally, it should be noted the victim did not identify anyone in the photo array. Your affiant is aware one of the suspect's was previously described as having their hood up and cinched around their face during the carjacking. This manner of facial obstruction could have limited the victim's ability to get a strong look at the suspect's face during the crime.

**Concerning Uber Technologies**

21. On October 11, 2024, the Honorable William Duffin, U.S. Magistrate Judge in the Eastern District of Wisconsin, signed a federal search warrant for records from Uber Technologies. Those records revealed that Michael Johnson did not order the rideshare request on the morning of the carjacking incident and the ride request was ultimately canceled by the requester who subsequently re-booked. This sequence is consistent with an uninvolved party who was seeking a legitimate ride.

**Timing Advance Area Searches and Tower Dumps**

22. On September 23, 2024, the Honorable Nancy Joseph, U.S. Magistrate Judge in the Eastern District of Wisconsin, signed a federal search warrant which authorized the cellular area searches and the collection of timing advance data in relation to the offenses listed above. This warrant returned thousands of lines of cellular data and information which was then analyzed to isolate only those identifiers whose records were consistent with the facts of the investigation, including being in the geographic area of more than one location. As a summary, the following locations were included in the warrant:

- Location 1 – 2609 N. Fratney Street, Milwaukee, Wisconsin on August 17, 2024
- Location 2 – Intersection of W. Center Street and N. 27th Street in Milwaukee on August 17, 2024
- Location 3 – Intersection of W. Center Street and N. Appleton Avenue in Milwaukee on August 17, 2024
- Location 4 – Intersection of North on N. 91st Street and W. Silver Spring Drive in Milwaukee on August 17, 2024

**Analysis of Timing Advance Area Search Data**

23. The information was analyzed by the Federal Bureau of Investigation (FBI) Cellular Analysis Survey Team (CAST) who provided information to investigators and summarized the information below as the initial identification of 414-554-3146 and 414-368-7042.

24. An initial review of the data responsive to the area search warrant identified that 414-554-3146 was the only device that matched 3 of the 4 location files. Furthermore, there were approximately six (6) devices that matched 2 different location files. Each of the data for those six (6) devices were reviewed further by looking into the detail of the records, including such parameters as those that had records consistent with the timing of the events in each location and identifying any device that also had records in the area of initial crime scene. This additional analysis identified a device which was later revealed as 414-368-7042 after additional legal process.

**414-554-3146 and Kalen Ostrowski**

25. FBI Special Agent Rienerth conducted the initial analysis of the Timing Advance records and identified a cellular device assigned telephone number 414-554-3146**.** The Timing Advance Records showed the following (denoted in blue in the below graphic):

- 414-554-3146 connected with towers in the area of the carjacking scene (Location 1) at 0524 and 0526 hours and at 0526 had a distance from tower measurement consistent with the area of the carjacking scene.

- 414-554-3146 then connected with towers incrementally consistent with moving in a west direction from the carjacking scene. This location information showed 414-554-3146 connecting to different towers at 0535 and 0539 consistent with that movement west towards the areas of Location 2 and Location 3.




a. The last record in the area search for 414-554-3146 was approximately

0.92 miles and approximately from the tower and approximately four (4) minutes after MPD attempted to initiate the traffic stop described within. As noted previously, the records are consistent with travel towards the area of Location 3 which is located at W. Center Street and W. Appleton Avenue which is where MPD Officers previously reported losing sight of the fleeing victim's vehicle.

26. Special Agent Rutter reviewed MPD Officer Gregory's Squad Camera footage from the aforementioned fleeing/eluding pursuit. SA Rutter observed a black four door sedan consistent with the suspect vehicle immediately preceding the victim's vehicle traveling West on W. Center Street through N. 27th Street prior to the initiation on the pursuit. Your affiant is aware one of the carjacking suspects was a passenger inside of Kalen Ostrowski's Toyota Camry while the other suspect was driving the victim's vehicle. The below screenshots from the squad camera footage show the suspect vehicle and the victim's vehicle traveling West on W. Center Street shortly after passing through N. 27th Street before MPD conducted a u-turn to initiate the traffic stop turned pursuit.


2024-08-17 05:35:41 -0500
AXON FLEET 3 F X684D23D6
Victim's Vehicle
Suspect Vehicle


2024-08-17 05:35:41 -0500
AXON FLEET 3 F X684D23D6
Victim's Vehicle
Suspect Vehicle




27. Your affiant is aware the location, date and time from the above screenshot and video is consistent with the reviewed location data placing 414-554-3146 in the same general area around the same time.

28. Your affiant believes this analysis shows the device's connections were consistent with surveillance camera and police squad camera recordings which documented the suspect vehicle and victim's vehicle's egressing West from the carjacking scene.

29. A search of public record aggregating databases commonly utilized by law enforcement revealed 414-554-3146 to be associated with Kalen C. Ostrowski (DOB: XX/XX/2005) as recently as May 2024.

30. Affiant reviewed records maintained by Wisconsin Department of Transportation which showed that Kalen Ostrowski is the registered owner of a black 2020 Toyota Camry "Night Shade" edition 4-door sedan. The vehicle is registered with Wisconsin license plate AUA2206 and VIN: 4T1G11AKXLU335910. The vehicle is registered to Kalen Ostrowski at 3260 W. Allerton Avenue in Greenfield, Wisconsin and the registration remains current as of October 31,

2024.

31. Your affiant is aware through an online VIN query that Kalen Ostrowski's Toyota Camry is equipped with a cellular antenna that is connected to AT&T's cellular network. This network connection functions regardless of whether the vehicle owner is paying for access to the connected services. A Federal grand jury subpoena to Toyota Motor North America revealed that Kalen Ostrowksi's vehicle with VIN: 4T1G11AKXLU335910 is assigned IMEI number: 015267002589966.

32. Below is a screenshot of the carjacking suspect vehicle as well as a stock image from the internet of a black 2020 Toyota Camry Night Shade edition. Your affiant finds this vehicle to be consistent with that of the suspect vehicle captured by security cameras during the carjacking. It should be noted Milwaukee Police Department Det. Bongel previously hypothesized the suspect vehicle could be a black Toyota Camry in his video surveillance follow-up report.





33. Affiant has further reviewed Milwaukee Police Department case C2410120009 reports which reflect on October 12, 2024, Kalen Ostrowski provided his telephone number as 414-554-3146 to Milwaukee Police Department Officers during a non-fatal shooting investigation near 238 E. Knapp Street in Downtown Milwaukee. A shooting victim was admitted to St. Joseph's Hospital with multiple gunshot wounds to their legs and hands. Kalen Ostrowski was identified as the shooter and was arrested by responding officers on scene. Kalen Ostrowski was found to be in possession of a black Springfield XPS-9 pistol bearing serial number BA678605. Your affiant is aware this is the same firearm previously found in the possession of Kalen Ostrowski by Oak Creek Police Department in August 2023 which had been previously purchased by his mother Stacey Barwick.

- Kalen Ostrowski was charged with 1st Degree Reckless Injury under Milwaukee County case 2024CF004905.

- Kalen Ostrowski provided his current address to Milwaukee County courts as 9111 W. Morgan Avenue, Apt. 4, in Milwaukee, Wisconsin as of October 16, 2024. Affiant subsequently queried We Energies regarding that address and determined that Ostrowski vacated that residence in December 2024.

Kalen Ostrowski provided his forwarded address to We Energies as 3260 W. Allerton Avenue.

34. Your affiant is aware Kalen Ostrowski has no previous felony convictions.

35. Your affiant is aware the firearm recovered from Kalen Ostrowski on October 12, 2024 did not match the physical description of the firearm provided by the carjacking victim. Your affiant is aware the described silver handgun is still outstanding and is not believed to have been recovered as of April 10, 2025.

36. On November 21, 2024, agents located a commercial license plate reader listing for the Toyota Camry which captured the vehicle parked on November 1, 2024 at Don Jacobs Toyota located at 5727 S. 27th Street in Milwaukee, Wisconsin.

37. On the same date, SA Rutter and SA Carlson traveled to Don Jacobs Toyota and observed the Toyota Camry parked outside the service department. Agents met with General Manager, Dustin Boundy and learned Kalen Ostrowski dropped off the Toyota Camry at Don Jacobs Toyota on October 7, 2024, for body work. Kalen Ostrowski was documented as the vehicle owner and agents observed his mother's name, Stacey Barwick was also handwritten on the service records. Kalen Ostrowski's contact number was documented as 414-554-3146. Mr. Boundy explained telephone number 414-554-3146 was the number utilized by Don Jacobs Toyota to communicate with Kalen Ostrowski.

38. On November 26, 2024, SA Carlson reviewed customer records from Don Jacobs Toyota, obtained via grand jury subpoena. The records, which stated they were created on July 19, 2023, state OSTROWSKI resides at "3260 W. Allerton Avenue, Milwaukee, Wisconsin". The records indicate OSTROWSKI's phone number is (414) 554-3146.

**Toyota and AT&T Search Warrants**

39. On December 10, 2024, the Honorable Nancy Joseph, U.S. Magistrate Judge in the Eastern District of Wisconsin, signed a federal search warrant which authorized the collection of historical timing advance data from AT&T related to the Toyota Camry bearing Wisconsin license plate AUA2206 belonging to Kalen Ostrowski. The returned cellular data and information was then analyzed by FBI SA/CAST Analyst Rienerth who found the vehicle's historical timing advance location data to be consistent with the previous timing advance data for Kalen Ostrowski's cellular device 414-554-3146 and showed activity in the geographic areas of/around the carjacking location on August 17, 2024. Additionally, SA Rienerth found the records were also consistent with travel West during the previously denoted times following the carjacking incident consistent with the flight path from the carjacking scene.

40. Also on December 10, 2024, the Honorable Nancy Joseph, U.S. Magistrate Judge in the Eastern District of Wisconsin, signed a federal search warrant authorizing the collection of GPS records and information associated with the Toyota Camry bearing Wisconsin license plate AUA2206 belonging to Kalen Ostrowski. The response from Toyota contained hundreds of thousands of GPS data points and corroborated the previous understanding of Kalen Ostrowski's vehicle's movements leading up to and following the carjacking incident on August 17, 2024.

41. SA Rutter reviewed those GPS records which revealed Kalen Ostrowski's Toyota Camry's onboard GPS device logged locations consistent with the vehicle's travel South on N. Fratney Street between E. Center Street and E. Clarke Street at approximately 5:26 AM on August 17, 2024 before turning West onto E. Clarke Street. The locations logged suggest that the vehicle then stopped for approximately one minute in front of 726 E. Clarke Street before continuing West on E. Clarke Street. Your affiant is aware security cameras revealed this is approximately where

the suspect vehicle was stopped and for the same approximate duration of time. See earlier paragraph detailing MPD Det. Bongel's review of security camera footage for a screenshot of the suspect vehicle parked in front of 726 E. Clarke Street. See below screenshot showing the GPS records for the Toyota Camry at approximately 5:26 AM on August 17, 2024.




42. SA Rutter conducted further analysis of the Toyota GPS records and observed the Camry's movements, as indicated through review of the progression of GPS data points over time, shortly before the carjacking incident to be inconsistent with normal travel between two locations and instead depicted irregular driving behavior. The progression of the vehicle's GPS coordinates, as reviewed by SA Rutter, appeared to indicate the vehicle circled in the general area and did not travel in direct path between two points consistent with normal travel.

43. SA Rutter conducted subsequent analysis of the Toyota GPS records and compared them against MPD Officer Gregory's squad camera footage. SA Rutter observed the GPS records for Kalen Ostrowski's vehicle placed the vehicle at the intersection of W. Center Street and N. 27th Street in Milwaukee, Wisconsin at approximately 5:35 AM on August 17, 2024. Your affiant is

aware this location record coincides with Officer Gregory's squad camera footage which showed the suspect vehicle to be traveling in a manner consistent with the historical GPS movement records of Kalen Ostrowski's Toyota Camry.

44. GPS records also indicated that Kalen Ostrowski's Toyota Camry's GPS device appeared to stop briefly after driving West through the intersection of W. Center Street and N. 29th Street in Milwaukee. SA Rutter reviewed MPD Officer Gregory's squad camera footage again and observed the suspect vehicle to pull over and allow the squad to continue pursuing the victim's Dodge Durango. Your affiant is aware this location record coincides with Officer Gregory's squad camera footage and shows the suspect vehicle behaving in a manner consistent with the historical GPS movement records of Kalen Ostrowski's Toyota Camry. Your affiant is also aware one of the carjacking suspects was inside of Kalen Ostrowski's Toyota Camry at this time. See below screenshot from Officer Gregory's squad camera and screenshot showing the GPS movements of Kalen Ostrowski's Toyota Camry.






45. Your affiant is aware the GPS records for Kalen Ostrowski's Toyota Camry are consistent with the previous understanding of the vehicle's movements leading up to and following the carjacking incident as previously understood based on analysis of both the historical timing advance data for 414-554-3146 and the historical timing advance data for the cellular antenna inside of his Toyota Camry.

46. SA Rutter conducted additional review of GPS records associated with Kalen Ostrowski's Toyota Camry following the events of the carjacking. GPS records revealed Kalen Ostrowski's Toyota Camry went to 8500 W. Fond du Lac Avenue at the below listed times on August 17, 2024 after the carjacking incident.

- 7:45 AM – Camry arrives in the area and stays for approximately 90 seconds. Further record analysis showed the vehicle remained running during this timeframe.

- 3:07 PM – Camry arrives in the area and stay for approximately 22 minutes. Further record analysis revealed the vehicle turned off at 3:10 PM and your

affiant is aware people often exit their vehicles after turning them off.

- 5:05 PM – Camry arrives in the area and stays for approximately 30 minutes. Further record analysis revealed the vehicle turned off at 5:08 PM and your affiant is aware people often exit their vehicles after turning them off.

47. Your affiant is aware the carjacking victim's vehicle was recovered adjacent to 8500 W. Fond du Lac Avenue and an unknown black male from 8500 W. Fond du Lac Avenue was seen interacting with victim's vehicle shortly before its recovery by MPD on August 18, 2024. Your affiant is aware any digital images taken of the vehicle by this unknown black male could reasonably appear in electronic conversations occurring between the co-conspirators.

48. Kalen Ostrowski's Toyota Camry returned to the area of 9111 W. Morgan Avenue in Milwaukee at approximately 11:21 PM on August 17, 2024 and no GPS records exist until 10:41 AM the following day. Further record analysis revealed the vehicle turned off at 11:24 PM.

49. Additionally, your affiant is aware through training and experience that users of cellular devices who are engaged in criminal activity commonly need to use those devices, sometimes smartphone applications, to communicate or coordinate their criminal actions. Furthermore, your affiant is aware these communications will not always present evidence thereof during review of traditional call data records. Lastly, your affiant is aware these applications often include the capability to store the content locally on the device and this content is only capable of being retrieved through forensic extraction of the device/s. The seizure and extraction of electronic information from devices associated with Kalen Ostrowski would likely yield information relevant to the carjacking investigation and other co-conspirators and their involvement. Your affiant is

aware the absence of a physical device from historical location records does not absolutely preclude that device from containing evidence as those engaged in criminal activity may use one device to arrange a crime and another device to carry out the crime.

50. SA Rutter also located a temporary but publicly visible "story" posted by Kalen Ostrowski to his Instagram on January 29, 2025. In this image, Kalen Ostrowski can be seen standing in front of a bathroom mirror holding what appeared to be a large quantity of United States currency. The apparent United States currency was separated into numerous stacks, and each wrapped with rubber bands. Your affiant is aware these rubber band stacks of United States currency appear consistent with the apparent United States currency photographs Kalen Ostrowski posted on January 1, 2025 with a notable difference being there is more of it now. Please refer to the photograph itself below.




**Regarding Residential Search Warrant at 3260 W. Allerton Avenue**

51. On February 24, 2025, ATF executed a federal search warrant at 3260 W. Allerton Avenue in Greenfield, Wisconsin. The Honorable Nancy Joseph, U.S. Magistrate Judge in the Eastern District of Wisconsin, authorized this search warrant on February 13, 2025. The warrant included Kalen Ostrowski's person, the residence located at 3260 W. Allerton Avenue, and a Toyota Camry sedan bearing Wisconsin license plate AUA2206. Your affiant knows the following subjects to be associated with 3260 W. Allerton Avenue based on review of utility information, vehicle registration, common database information and surveillance: Kalen Ostrowski, Stacey Barwick, and Kathleen Rich.

52. SA Rutter and SA Carlson located Kalen Ostrowski at the Milwaukee County Safety Building at 821 W. State Street in Milwaukee, Wisconsin. Kalen Ostrowski was present in Courtroom 316 for a status conference related to his open State of Wisconsin felony 1st Degree RES case charged under 2024CF004905. After the hearing, Kalen Ostrowski was escorted to a side room by Milwaukee County Sheriff's Deputies where agents were waiting. Kalen Ostrowski was informed of the search warrant and submitted to the search of his person without incident. Recovered from his person was an Apple iPhone in a black case. No interview occurred with Kalen Ostrowski at the request of his attorney Stephen Sargent. Contemporaneous to the search of his person, the search warrant was also executed at 3260 W. Allerton Avenue.

53. During the course of the search, numerous items of evidentiary value were located. Many of these evidentiary items were found in Room 1 which contained indicia suggesting this room belonged to Kalen Ostrowski

54. Agents located identifiers for Kalen Ostrowski in the first bedroom off the living room (hereafter, Room 1). Room 1 occupied space along the east side of the residence. In this room agents located mail and medication for Kalen Ostrowski in and on the dresser. Agents also located the spare key for Kalen Ostrowski's Toyota Camry sitting atop the dresser in Room 1. Inside Room 1's dresser drawer, agents located a Wisconsin probationary driver's license for Kalen Ostrowski which expired in April 2024. Clothing and footwear of his approximate sizing was also located in the closet of Room 1. Based on the presence of these identifiers, affiant believes Room 1 is the bedroom of Kalen Ostrowski. Importantly, Room 1 is where agents located the following:

- On the floor and openly in the middle of Room 1, agents located a Louis

Vuitton duffle bag containing approximately 2.6 pounds (including the weight of packaging) of green leafy substance in assorted types of packaging including, but not limited to, vacuum sealed bag, large plastic bags and commercial packaging, glass jars, small plastic jeweler bags and apparent THC gummies.

- Digital scale located in the dresser drawer alongside additional green leafy substance and suspected THC gummies totaling approximately 1.8 pounds including the weight of packaging. It should be noted this packaging included a plastic container, small plastic jeweler bags and glass jars which add considerable weight. Below is a collective photograph showing all suspected marijuana and THC products found in Room 1.



- Remington 870 Shotgun bearing serial number RAS144912 found under the bed.

- $11,771.00 in United States Currency found in the closet
- Apple iPhone found on desk
- Apple iPhone found in dresser drawer

55. W Lastly, agents located a vacuum sealed bag in the trashcan outside consistent in appearance with the vacuum sealed bag previously found in Louis Vuitton duffel bag which contained suspected marijuana. This vacuum sealed bag from the trash was photographed only and showed other plastic packaging stuffed inside it.



56. W Your affiant is aware Kalen Ostrowski was arrested by Milwaukee Police Department on February 24, 2025 related to the discovery of the aforementioned items at 3260 W. Allerton Avenue and is currently in custody related to pending charges involving Possession with Intent to Distribute (marijuana) while armed and felony bail jumping stemming from Ostrowski's

violations of the conditions of his felony bond in Milwaukee County Circuit Court case 2024CF4905.

57. During a cursory review of the Apple iPhone recovered from Kalen Ostrowski's person for evidence of the carjacking offense, agents observed numerous photographs of apparent marijuana in varying quantities. Agents observed these types of photographs were frequent and spanned at least back to August 2024.

58. On February 24, 2025, SA Carlson took the sealed bag of US Currency to Milwaukee's High Intensity Drug Trafficking Areas (HIDTA) location. SA Carlson and SA Mason met with HIDTA investigators. SA Carlson broke the bag's seal and removed the currency for inspection in the presence of Det. Chris Conway where they set up a controlled environment. Milwaukee Police Department (MPD) Det. Naverette and his K9 Czar went on to conduct a controlled test of the currency. K9 Czar alerted on the currency for the presence of narcotics. SA Carlson and SA Mason then re-sealed the currency in a new bag and transported it back to ATF.

59. On February 24, 2025, SA Rutter and SA Linderman weighed and tested the aforementioned green leafy substance products from the Louis Vuitton duffle bag in Room 1 and found them to weigh approximately 2.6 pounds with all original packaging. SA Rutter subsequently subjected a sample of the green leafy substance to a NARK II Duquenois-Levine Reagent (NARK2005) field tests and found the substances to test positive for the presence of THC. The items were subsequently entered into ATF Property as Item 012 under Investigation 24-23360.

60. On February 24, 2025, SA Rutter and SA Linderman weighed and tested the green leafy substance and suspected THC gummies from the original packaging in which it was located within during discovery in the dresser drawer from Room 1. Agents found the substance to weigh

approximately 1.8 pounds with the original packaging. It should be noted this packaging included glass jars which added considerable weight. SA Rutter subsequently subjected a sample of the green leafy substance to a NARK II Duquenois-Levine Reagent (NARK2005) field test and found the substances to test positive for the presence of THC. The items were subsequently entered into ATF Property as Item 016 under Investigation 24-23360.

**Identification of Areon DAVIS and Life360**

61. On February 24, 2025, SA Carlson conducted a cursory review of the Apple iPhone in a black case recovered from Ostrowski's person. SA Carlson specifically reviewed photographs located on the phone and SA Carlson located the following photograph depicting Ostrowski and two black males sitting on his aforementioned Toyota Camry in the area of "Old North Milwaukee" on August 17, 2024 at 1:22 AM. Your affiant is aware that the carjacking took place only a few hours after this photograph was taken.




62. On the same date, SA Carlson sent the above photograph to the Mid-States Organized Crime Information Center (MOCIC) who conducted a facial recognition search. SA Carlson was notified by Criminal Information Specialist Dan Wellen, that the black male depicted above, in the middle position, wearing a tan colored t-shirt was possibly identified as Areon DAVIS (DOB XX/XX/2003). SA Carlson then deconflicted DAVIS with MPD and learned Areon DAVIS has been in custody since December 10, 2024, stemming from a 1st Degree Intentional Homicide charge (MPD IR no. C241107194).

63. After learning of the possible facial recognition hit involving DAVIS, your affiant reviewed several Milwaukee County booking photographs for DAVIS. After reviewing the booking photographs, your affiant believes the person in the booking photographs is consistent in appearance and features with the person seated between OSTROWSKI and the other unidentified-person in the above-described photograph taken on August 17, 2024.

64. Your affiant reviewed the associated MPD reports associated with that homicide investigation which stated on November 20, 2024, MPD detectives identified the phone number 414-940-0135 as a phone number belonging to Davis. According to those reports, A.H., DAVIS' sister, stated, during an interview with detectives, 414-940-0135 was her "blood brother" Areon DAVIS' phone number, and she had the number stored in her phone. During this same interview, A.H. stated DAVIS had a Life360 application installed on his phone which she used to check on DAVIS' location.

- According to the Life360 website, Life360 is a "real-time location-sharing app designed to help families stay connected and safe. Users can create private groups of people called "circles", wherein each member of the group shares their location in real-time with other users. The app can be used to track loved ones, receive notifications if they need help, and even find them if they get lost. Life360 also has features such as location safety, advanced driving, digital safety, emergency assistance features, and Tile Bluetooth trackers."

65. MPD reports reflect that officers subsequently obtained subscriber information and location data, detailing the devices movements around the time of the homicide, for the Life360 account for phone number (414) 940-0135, and received the following account identifiers:

- User ID: 2b1a3d8f-3073-4383-ad54-3a88a47eeafd
- Name: Paid Ape
- Email: Areondavis10@gmail.com
- Phone Number: 414-940-0135

- Created: 03/17/2023

66. On February 25, 2025, SA Rienerth reviewed timing advanced data obtained via federal search warrant related to the August 17, 2024 carjacking. SA Rienerth stated the data showed that a device using phone number 414-940-0135 (DAVIS) was present in the records and the device had records consistent with being present in the area of the carjacking around the time in which the carjacking occurred. More specifically, 414-940-0135 (DAVIS) had distance from tower measurements consistent with the area of the carjacking around 5:26 AM and 5:27 AM. These location records were also consistent with the location records for the aforementioned Toyota Camry belonging to Ostrowski, and 414-554-3146 (OSTROWSKI) around that time, which is just prior to when the vehicle left the area and was observed traveling West on West Center Street.

67. Additionally, SA Rienerth observed that the phone number had telephonic communications with both 414-554-3146 (OSTROWSKI) and 262-270-9882 (JOHNSON) over multiple months, including in the evening hours on August 17, 2024.

- It should be noted, agents have previously identified phone number 262-270-9882 as being associated with Michael Johnson, because Johnson lists this phone number with Wisconsin Probation and Parole.

- It should be noted, Johnson's fingerprint was located on the stolen Durango by MPD during their processing of the vehicle following its recovery.

**Review of Ostrowski's iPhone**

68. During a review of the contents of Ostrowski's devices, SA Rutter located numerous relevant contents to the aforementioned carjacking investigation. The device can be

more particularly described as an iPhone 15 Pro Max with IMEI 358071246202922 and Serial Number HHH46T3N6C. The Apple ID account name was kalen.ostrowski@yahoo.com and the device name was "Kalen's iphone 15 Pro Max." The device was assigned telephone number 414-554-3146.

**Photographs/Videos**

69. SA Rutter located images depicting OSTROWSKI with DAVIS and two (2) unknown black males. It should be noted this photograph was previously observed by SA Carlson on February 24, 2025 and utilized to identify DAVIS through facial recognition software. The photographs show OSTROWSKI, DAVIS and the unknown males posing at the rear of OSTROWSKI's Toyota Camry sedan bearing Wisconsin license plate AUA2206. The metadata contained within the images revealed them to have been captured by OSTROWSKI's device in the area of 48XX N. 39th Street in Milwaukee and at 0122 hours on August 17, 2024. SA Rutter is aware the aforementioned carjacking occurred at 0530 hours on August 17, 2024.






70. SA Rutter located an image captured on August 17, 2024 at 1441 hours. The image captured what appears to be OSTROWSKI's point of view as the backseat passenger of a vehicle. Visible in the photograph is branding on the driver's seat headrest depicting the characters "R/T". Also visible is an unknown black male in the front passenger seat. The metadata contained within the image revealed it to have been captured by OSTROWSKI's device in the area of 5700 N. 84th Street in Milwaukee. It should be noted this is the approximate area the carjacking victim's Dodge Durango R/T was recovered on August 18, 2024 and is immediately adjacent to 8500 W. Fond du Lace Avenue.



71. Another photograph was captured by OSTROWSKI's device at 1510 hours depicting a black Dodge Durango with white stripes on the hood. The metadata contained within the image revealed it to have also been captured in the area of 5700 N. 84th Street in Milwaukee. It should be noted the white stripes on the hood of the victim's Dodge Durango had been removed prior to the vehicle's recovery on August 18, 2024.




72. SA Rutter located a video captured by OSTROWSKI's device on August 17, 2024 at 2308 hours. The metadata for the video revealed it was recorded adjacent to 8500 W. Fond du Lac Avenue. The video captured the interior of a Dodge vehicle that appears consistent with the carjacking victim's Dodge Durango. In the video, OSTROWSKI can be heard saying "Durango." An unknown black male wearing a red sweatshirt is seated in the front passenger seat. Below are screenshots from that video and MPD crime scene photographs captured after the recovery of the aforementioned Dodge Durango for comparison.


DODGE









73. SA Rutter located a photograph of OSTROWSKI brandishing what appears to be a Glock pistol while inside a residence. The image was captured on August 17, 2024 at 2010 hours. The metadata for the image revealed it to have been captured in the approximate area of N. 65th

Street and W. Sheridan Avenue in Milwaukee.



**Google Search History**

74. SA Rutter located and reviewed Google search history for OSTROWSKI. It should be noted no date/time information was included in the records, but OSTROWSKI conducted the following searches sequentially:

- "ford explorer interceptor top speed"
- "dodge durango rt horsepower"

- “ford explorer interceptor hp”
- “2024 dodge durango rt top speed”
- “dodge durango rt top speed”
- “armed robbery of dodge durango Milwaukee”
- “black dodge durango milwaukee armed robbery.”

**Messages with 414-940-0135 aka “Pedro” aka Areon DAVIS**

75. SA Rutter located a conversation thread between OSTROWSKI and telephone number 414-940-0135 which was saved in his contacts as “Pedro” hereinafter referred to as DAVIS.

76. On March 23, 2024 at 2117 hours, OSTROWSKI asked DAVIS to let him (OSTROWSKI) know if he (DAVIS) ever has a “mini drac” for sale. SA Rutter recognizes this reference to be a Century Arms Mini Draco which is a AK-style pistol chambered in 7.62x39mm which accepts regular AK style 30 round magazines. DAVIS responded he just sold one but still had another for sale which could be purchased for $900.00. OSTROWSKI responded asking if the firearm was “clean” (suspected reference to the firearm having not been used in any crimes). DAVIS stated the firearm was brand new and purchased from a firearms store. DAVIS continued and explained he had “plugs” on everything. SA Rutter recognizes the term “plug” to refer to sources or connections. OSTROWSKI and DAVIS went on to discuss spending time together and smoking marijuana.

77. On April 11, 2024, at 2311 hours, OSTROWSKI sent a message to DAVIS

advising, “Dis yo neighbor” after being asked by DAVIS who he was after a period of no text communication.

78. OSTROWSKI and DAVIS went on to have general conversation surrounding spending time together, Percocet pills, marijuana and each other’s locations over the next several months.

79. On August 15, 2024, at 2115 hours, OSTROWSKI sent DAVIS a message advising they could go somewhere unspecified in OSTROWSKI’s vehicle. DAVIS asked, “Should I bring smack with me or the tints to dark?” and OSTROWSKI responded, “Tint way to dark I only bring smack in my other car.” OSTROWSKI continued, “So leave yo smack we gon be straight” (suspected reference to a firearm).

- At 2142 hours, OSTROWSKI sent a message to DAVIS asking if he (DAVIS) was ready.
- At 2200 hours, OSTROWSKI sent DAVIS a photograph of himself (OSTROWSKI) holding a Glock pistol with what appeared to be a machinegun conversion device (MCD) affixed to the rear. An MCD is colloquially referred to as a “switch.”
- On August 16, 2024, at 0845 hours, DAVIS sent a message to OSTROWSKI asking if he (OSTROWSKI) was awake yet. OSTROWSKI responded he was awake and planning to “go grind” (grind is a slang term often used to describe illegal narcotics sales). DAVIS responded, “Let’s go.”

- At 1128 hours, DAVIS advised he was arriving.

**Review of subpoena records for 414-940-0135**

80. Your affiant is aware grand jury subpoena records for T-Mobile related to telephone number 414-940-0135 revealed the subscriber to be listed as "Areon Davis" with an address of 9131 W. Congress Street, Apartment 4 in Milwaukee, Wisconsin. The IMEI for the device was listed as 355111141944641. This number was first activated with T-Mobile after being transferred from another carrier on June 8 2024 and was transferred to a T-Mobile pre-paid account on August 5, 2024. The line remained active until January 5, 2025.

- Your affiant is aware MPD arrested DAVIS for the previously mentioned homicide on or about December 10, 2024.

**Review of Apple iCloud Subpoena Data**

81. On April 10, 2025, SA Rutter reviewed data obtained from Apple pursuant to a grand jury subpoena. The subpoena requested data associated with any iCloud accounts related to telephone number 414-940-0135 and IMEI 310260499936786. Apple provided account information for iCloud account paidape@icloud.com which was created on May 5, 2021. The name listed on the account was "Paid Ape." Your affiant is aware the name "Paid Ape" is the same name previously associated with DAVIS' Life360 account. The provided address with the iCloud account associated with paidape@icloud.com was 9131 W. Congress Street, Apartment 4 in Milwaukee, Wisconsin.

- An additional, yet older, address associated with the iCloud account paidape@icloud.com is 6110 W Calumet Road, Apartment 101 in Milwaukee, Wisconsin which is also a previously associated address to DAVIS in record aggregating databases.

82. Affiant is aware that those who possess Apple devices often utilize Apple's iCloud services to back up and store their data in the event they need to recover information. Further, affiant is aware that this stored data can include, but is not limited to, text messages, call records, location data, photographs and videos.

83. Affiant believes the correspondence located within the Target iCloud account will additionally provide further evidence of violations Title 18 U.S.C § 2119 – Carjacking and Title 18 U.S.C § 922(g)(1) – Felon in Possession of a Firearm.

## BACKGROUND CONCERNING APPLE

84. In my training and experience I have learned, Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

85. Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps"). As described in further detail below, the services include email, instant messaging, and file storage:

a. Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

b. iMessage and FaceTime allow users of Apple devices to communicate in real-time. iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct audio and video calls.

c. iCloud is a cloud storage and cloud computing service from Apple that allows its users to interact with Apple's servers to utilize iCloud-connected services to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device.

For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on iCloud.com. iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers. iCloud Drive can be used to store presentations, spreadsheets, and other documents. iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices. iCloud Backup allows users to create a backup of their device data. iWork Apps, a suite of productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

d. Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

e. Find My iPhone allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices. Find My Friends allows owners of Apple devices to share locations.

f. Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

g. App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be purchased through iTunes

Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

86. Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services. The account identifier for an Apple ID is an email address, provided by the user. Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail). The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address. Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

87. Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers. The user may also provide means of payment for products offered by Apple. The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website. In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status ¬¬of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

88. Additional information is captured by Apple in connection with the use of an Apple

ID to access certain services. For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website. Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account. Records relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

89. Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card. Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs into FaceTime or iMessage. Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number. In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com. Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

90. Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space. That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo

Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data. Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud Drive. Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple.

91. Your affiant is aware that Areon DAVIS' iCloud account is likely to contain electronic information such as messages, call records, location data, photographs and videos. The account paidape@icloud.com and the evidence therein would accordingly be extremely useful to the investigation. In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

92. For example, the stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation. Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

93. In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

94. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

95. Other information connected to an Apple ID may lead to the discovery of additional evidence. For example, the identification of apps downloaded from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

96. Therefore, Apple's servers are likely to contain stored electronic communications

and information concerning subscribers and their use of Apple's services. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

**CONCLUSION**

97. There is probable cause to believe that in the Apple iCloud account for Areon DAVIS listed as paidape@icloud.com as listed in the aforementioned paragraphs there is evidence of violations of Title 18 U.S.C § 2119 – Carjacking and Title 18 U.S.C § 922(g)(1) – Felon in Possession of a Firearm.

98. That based upon Affiant's training and experience, Affiant knows that the execution of a search warrant related to remotely stored accounts such as Apple and within email accounts maintained by Apple such as "iCloud" usually results in items of personal documents such as bills, bank statements, photographs, videos, and other items or documents which establish the identities of persons in control of the media.

99. That based upon Affiant's training and experience, Affiant knows that individuals purchasing and selling firearms routinely keep emails, regarding the purchases and/or sales.

100. That Affiant knows that it is common for firearms purchasers and possessors to maintain electronic records, receipts, notes, ledgers, receipts relating to the transportation, ordering and purchase of firearms and that such records are typically kept where the purchaser would have ready access to them including Apple accounts.

101. That Affiant knows that firearm possessors and traffickers often take or cause to be taken photographs and other visual depictions of themselves, their associates, their property and their firearms, and typically keep and maintain these photographs in their residences and other locations where they exercise dominion and control such as telephones, tablets, computers, other

media storage devices and remote storage locations.

## TECHNICAL TERMS

102. Based on my training and experience, I use the following technical terms to convey the following meanings:

103. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

104. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

## REQUEST FOR SEALING

105. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

**ATTACHMENT A**
**Property to Be Searched**

This warrant applies to information associated with paidape@icloud.com that is stored at premises owned, maintained, controlled, or operated by Apple Inc., a company headquartered at One Apple Park Way, Cupertino, California.

## ATTACHMENT B
**Particular Things to be Seized**

1. Information to be disclosed by Apple (Provider)

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, regardless of whether such information is stored, held or maintained inside or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Apple, or has been preserve, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A from 03/01/2024 to 01/05/2025:

- All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);
- All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"),

Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

- The contents of all emails associated with the account from 03/01/2024 to 01/05/2025, including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;
- The contents of all instant messages associated with the account 03/01/2024 to 01/05/2025, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;
- The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes),

iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

- All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;
- All records and information regarding locations where the account or devices associated with the account were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps;
- All records pertaining to the types of service used;
- All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken; and
- All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

Apple is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of Title 18 U.S.C § 2119 – Carjacking and Title 18 U.S.C § 922(g)(1) – Felon in Possession of a Firearm, those violations involving Areon DAVIS and occurring after 03/01/2024 to 01/05/2025, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) Records containing the sale/purchase order of ammunition in a illegal format that is intended for the military/law enforcement that would not be for public use. Records can be contained in emails, text messages, SMS messages, iMessages, etc.

(b) Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(c) Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(e) The identity of the person(s) who communicated with the user ID about matters relating to the conspiracy and illegal importation of ammunition, including records that help reveal their whereabouts.